IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID WONTAE FITZGERALD, | ) |
| Plaintiff, | ) Civil Action No. 2:22-cv-853 |
| v. | ) Magistrate Judge Patricia L. Dodge |
| RANDY RUSSELL, Captain (Butler County Prison), and REISER, Correctional Officer (Butler County Prison), | ) |
| Defendants. | ) |

**MEMORANDUM OPINION**[1]

Plaintiff David Wontae Fitzgerald is an inmate in the custody of the Pennsylvania Department of Corrections. Plaintiff brought this civil rights action under 42 U.S.C. § 1983 against Randy Russell and Reiser, two employees at the Butler County Prison. Before the Court is the Motion for Summary Judgment filed by Defendants. (ECF No. 62.) For the reasons below, Defendants' motion will be granted.

**I.  Relevant Procedural History**

Plaintiff brings claims of excessive force against Defendants.[2] (ECF No. 7 at 3.) He also asserts state law claims of assault and battery stemming from the same incident. (*Id.* at 17.)

Defendants filed the instant Motion for Summary Judgment supported by a Brief, a Concise Statement of Material Facts not in Dispute, and an Appendix of exhibits. (ECF Nos. 62, 66, 63, and 64, respectively.) Plaintiff filed a Response to the Motion for Summary Judgment, a Brief in

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case. Thus, the undersigned has the authority to decide dispositive motions.
[2] Plaintiff has clarified that he is pursuing Defendants in their individual capacities only. (ECF No. 71 at 3.)

Support for the Response, a Counterstatement of Material Facts, and an Appendix. (ECF Nos. 70, 71, 72, and 73, respectively.) Defendants filed a Response to Plaintiff's Counterstatement of Material Facts. (ECF No. 74). The motion is ripe for consideration.

   II.   **Factual Background**

As reflected in their concise statements, the parties largely agree on the relevant facts about the incident that lead to Plaintiff's claims. (ECF Nos. 63, 72, and 74.)[3]

On April 1, 2022, Plaintiff was an inmate at the Butler County Prison ("BCP") as a detainee of the federal government. (ECF No. 63 ¶¶ 1-2; ECF No. 72 ¶¶ 1-2.) On that date, Plaintiff complained to Officer Reiser, who was at the correctional officers' station in the day room area, that he did not get a dinner tray. (ECF No. 63 ¶¶ 12-13; ECF No. 72 ¶¶ 12-13.) The day room is a common area space for inmates when they are not in their cells. (ECF No. 63 ¶; ECF No. 72 ¶ 6.) Reiser, who had witnessed Plaintiff eating from two trays, asked Captain Russell to check the cameras and report to the pod. (ECF No. 63 ¶ 14; ECF No. 72 ¶ 14.) Russell did so. (ECF No. 63 ¶¶ 16-17; ECF No. 72 ¶¶ 16-17.)

Plaintiff came to the correctional officers' station to talk to Russell. Russell explained to Plaintiff that although he had not received a dinner tray, the kitchen would not send a tray for him

---

[3] Defendants have also submitted video evidence of the incident. (ECF Nos. 64-2, 64-3, and 64-12.) As a result, the Supreme Court's holding in *Scott v. Harris*, 550 U.S. 372 (2007), is significant to the Court's analysis. In *Scott*, a videotape of the events at issue flatly contradicted the plaintiff's allegations. *Id*. at 379-80. The Court held that: "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id*. at 380. *See also Morgan v. Borough of Fanwood*, 680 Fed. Appx. 76, 80 (3d Cir. 2017) ("when, as here, there is reliable video footage of the facts in the record, we view the facts in the light as depicted by the videotape.") In this case, the parties tell essentially the same story; in addition, the Court has viewed the video evidence and has confirmed the parties' representations.

because he had eaten from two other trays. (ECF No. 63 ¶¶ 21-26; ECF No. 72 ¶¶ 21-26.) Plaintiff challenged this decision. (ECF No. 63 ¶ 27; ECF No. 72 ¶ 27.)

Russell ordered Plaintiff to return to his cell and pack his belongings because he would be moved to the Restrictive Housing Unit on disciplinary status for lying to an officer and arguing. (ECF No. 63 ¶ 28; ECF No. 72 ¶ 28.) Plaintiff refused and continued to plead his case to Russell. (ECF No. 63 ¶ 29; ECF No. 72 ¶ 29.) Russell then pointed a container of Oleoresin Capsicum ("O.C.") spray at Plaintiff, warning him that he would be sprayed if he did not follow orders. (ECF No. 63 ¶ 31; ECF No. 72 ¶ 31.)About 8 seconds later, Russell stopped pointing the O.C. spray at Plaintiff, but Plaintiff continued his verbal campaign and did not leave the station. (ECF No. 63 ¶ 33; ECF No. 72 ¶ 33.)

Russell again ordered Plaintiff to pack his belongings, and around 10 seconds after he stopped pointing the O.C. spray at Plaintiff, he pointed it at him again. (ECF No. 63 ¶ 36; ECF No. 72 ¶ 36.) Two seconds later, Russell administered a one-second spray of O.C. spray at Plaintiff. ECF No. 63 ¶ 37; ECF No. 72 ¶ 37.) Plaintiff then rushed at Russell, punching him in the mouth with a closed fist. (ECF No. 63 ¶ 38; ECF No. 72 ¶ 38.) Russell fell backwards into the correctional officer's station. ECF No. 63 ¶ 39; ECF No. 72 ¶ 39.) Plaintiff them came after him and as Russell was on the floor, Plaintiff repeatedly struck him. (ECF No. 63 ¶¶ 40, 41; ECF No. 72 ¶¶ 40, 41.) Reiser delivered closed-hand strikes to Plaintiff as Plaintiff was attacking Russell. (ECF No. 63 ¶ 43; ECF No. 72 ¶ 43.) Russell was eventually able to draw and deploy his Taser at Plaintiff. (ECF No. 63 ¶ 44; ECF No. 72 ¶ 44.) Plaintiff then got off Russell, sprinted up the stairs and entered his cell. (ECF No. 63 ¶ 45; ECF No. 72 ¶ 45.)

Plaintiff was examined by medical staff in the RHU, where he was taken after this incident. (ECF No. 63 ¶¶ 46, 47; ECF No. 72 ¶¶ 46, 47.) A nurse helped him wash the O.C. spray out of

his eyes. (ECF No. 63 ¶ 47; ECF No. 72 ¶ 47.) He was also treated for a wound on his hand which required stitches. (ECF No. 63 ¶ 51; ECF No. 72 ¶ 51.) Russell was treated for a broken tooth, a mouth laceration, and a deviated septum. (ECF No. 63 ¶ 53; ECF No. 72 ¶ 52.)

### III. Standard of Review

Rule 56 of the Federal Rules of Civil Procedure provides that: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of showing the absence of a genuine, material dispute and an entitlement to judgment. *Id.* at 323. This showing does not necessarily require the moving party to disprove the opponent's claims. Instead, this burden may often be discharged simply by pointing out for the court an absence of evidence in support of the non-moving party's claims. *Id.*

Once the moving party has met their initial burden, then the burden shifts to the non-moving party to demonstrate, by affidavit or other evidence, "specific facts showing that there is a genuine issue for trial" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A non-moving party must "go beyond the pleadings" and show probative evidence creating a triable controversy. *Celotex*, 477 U.S. at 324. An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In following this directive, a court must take the facts in the light most favorable to the non-moving party and must draw all reasonable

inferences and resolve all doubts in that party's favor. *Hugh v. Butler Cty. Fam. YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).

Although courts must hold *pro se* pleadings to "less stringent standards than formal pleadings drafted by lawyers," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), at the summary judgment stage a *pro se* plaintiff is not exempt from his burden of providing some affirmative evidence, not just mere allegations, to show that there is a genuine dispute for trial. *See, e.g.*, *Barnett v. NJ Transit Corp.*, 573 Fed. Appx. 239, 243 (3d Cir. 2014) (holding that the *pro se* plaintiff was still "required to designate specific facts by use of affidavits, depositions, admissions, or answers to interrogatories . . . sufficient to convince a reasonable fact finder to find all the elements of her prima facie case") (citation and quotation omitted); *Siluk v. Beard*, 395 Fed. Appx. 817, 820 (3d Cir. 2010) ("[T]he right of self-representation does not exempt a party from compliance with relevant rules of procedural law."); *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (*pro se* plaintiffs "cannot flout procedural rules—they must abide by the same rules that apply to all other litigants.")

**IV.   Analysis**

A.   Exhaustion of Administrative Remedies

Defendants first argue that Plaintiff failed to exhaust his administrative remedies. (ECF No. 66 at 3-7.) Whether a prisoner has exhausted administrative remedies is a question of law determined by the court, even if that determination requires the resolution of disputed facts. *Small v. Camden County*, 728 F.3d 265, 269 (3d Cir. 2013).

The PLRA mandates that an inmate exhaust "such administrative remedies as are available" before bringing a suit challenging prison conditions. 42 U.S.C. § 1997e(a). The exhaustion requirement "applies to all inmate suits about prison life, whether they involve general

circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). The Supreme Court has repeatedly observed that "the PLRA's exhaustion requirement "is 'mandatory': An inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies." *Ross v. Blake*, 578 U.S. 632, 638 (2016) (citing *Woodford v. Ngo*, 548 U.S. 81, 85 (2006) and *Jones v. Bock*, 549 U.S. 199, 211 (2007)).

The PLRA's mandatory exhaustion requirement means that a failure to exhaust administrative remedies in accordance with a prison's grievance procedures constitutes procedural default. That is so because "the PLRA's exhaustion requirement requires proper exhaustion." *Woodford*, 548 U.S. at 93-95; *see also Spruill v. Gillis*, 372 F.3d 218, 227-30 (3d Cir. 2004). The prison's grievance policy is what "define[s] the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218; *Spruill*, 372 F.3d at 231 ("prison grievance procedures supply the yardstick for measuring procedural default."). Thus, the procedural requirements for exhaustion in a given case are drawn from the policies of that prison rather than from any free-standing federal law.

Defendants do not dispute that, in compliance with the Butler County Prison Grievance Policy ("Policy") (ECF No. 64-16), Plaintiff filed a grievance alleging that he was assaulted by Defendants. (ECF No. 66 at 6.) They also acknowledge that he appealed the denial of that grievance. (*Id.*) That appeal was denied by the Deputy Warden. (*Id.*)

However, they argue that Plaintiff did not fully exhaust his administrative remedies because he did not take another step required by the Policy:

> 12. If the inmate is not satisfied with the final decision, he/she *may elect* to forward the grievance to any person or entity for review that is not under the control of the Warden. The inmate has the right to make a request or submit a grievance to the prison administration, judiciary or other proper authorities without censorship as to the substance. This process will be permitted without any interference from prison

employees. Forwarding of any grievance may be accomplished via the United States mail system at the grieving inmate's expense.

(ECF No. 61-16 at 4)(emphasis supplied.)

In response, Plaintiff asserts that he completed the administrative review process, noting that the Policy describes a decision on the appeal of the denial of the grievance as "the final resolution within the Prison." (ECF No. 71 at 9)(citing ECF No. 64-16 at 4).

The Court agrees. The Policy is clear that administrative review is complete upon resolution of the appeal of a grievance decision. Defendants do not dispute that Plaintiff properly obtained this resolution. The paragraph highlighted by Defendants describes optional steps that a prisoner "may" take after exhausting prison administrative remedies. These steps are not part of the prison grievance process.

Therefore, Defendants are not entitled to summary judgment on this basis.

### B. Excessive Force

Because Plaintiff was a pretrial detainee at the relevant time, his excessive force claim arises under the due process clause of the Fourteenth Amendment. The Fourteenth Amendment protects pretrial detainees from "the use of force that amounts to punishment." *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989) (citing *Bell v. Wolfish*, 441 U.S. 520, 535-39 (1979)).

To state a Fourteenth Amendment violation for excessive force, a pretrial detainee must allege facts to plausibly suggest "that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, 576 U.S. 389, 396-97 (2015). Courts must pay "careful attention to the facts and circumstances of each particular case," and use these six "*Kingsley* factors": "[1] the relationship between the need for the use of force and the amount of force used; [2] the extent of the plaintiff's injury; [3] any effort made by the officer to temper or

to limit the amount of force; [4] the severity of the security problem at issue; [5] the threat reasonably perceived by the officer; and [6] whether the plaintiff was actively resisting." *Kingsley*, 576 U.S. at 397.

In this case, the use of the force against Plaintiff falls into two categories: (1) Russell's initial use of O.C. spray; and (2) Russell's and Reiser's efforts to stop Plaintiff's assault on Russell.

As to the second category, no reasonable jury who viewed the video evidence of the incident and the undisputed facts could return a verdict finding that either Russell or Reiser used excessive force in their efforts to stop Plaintiff's assault on Russell. In a day room open to inmates, Plaintiff rushed at Russell, punching him in the mouth with a closed fist. Russell fell to the floor where Plaintiff proceeded to repeatedly strike him. Reiser delivered closed-hand strikes to Plaintiff as Plaintiff continued to attack Russell. While being beaten, Russell was eventually able to deploy his Taser at Plaintiff. It was not until the deployment of the Taser that Plaintiff stopped his assault on Russell and ran away.

When these facts are applied to the *Kingsley* factors, it is evident that Plaintiff's constitutional rights were not violated. It is uncontroverted that Plaintiff caused a serious security problem as he attacked Russell in a common area of the prison. Before Plaintiff attacked Russell, Russell made efforts to deescalate the situation without success. The need for force was evident as Plaintiff repeatedly struck Russell as he lay on the floor, and the amount of force used by Reiser to intervene as viewed in the video, was not excessive. Further, the use of the Taser by Russell was appropriate under the circumstances. Further, the injuries sustained by Plaintiff, limited to treatment for O.C. spray in his eyes and for a wound on his hand, were not serious and were a direct result of his own actions. By contrast, Russell sustained significant injuries as a result of Plaintiff's assault.

The first category, Russell's initial use of O.C. spray, does not require significantly more analysis. Plaintiff concedes that he did not comply with Russell's orders to return to his cell and pack his belongings. As the video evidence confirms, Russell attempted to resolve the issue without the use of any force by first by talking to Plaintiff, then warning him of an imminent O.C. spray, and then engaging Plaintiff in further discussion before deploying a one-second burst of O.C. spray. An analysis of the *Kingsley* factors conclusively demonstrates that no unreasonable amount of force was used, and that the minimal force that was employed was justified. Russell made several efforts to avoid the use of force. Plaintiff repeatedly rejected the orders of a correctional officer, thereby threatening penological order in a common area of the correctional institution. Further, Plaintiff sustained no lasting injuries as a result.

Thus, Defendants are entitled to judgment in their favor with respect to Plaintiff's excessive force claims against Russell and Reiser.

    C. State law claims

Given the fact that Defendants are entitled to judgment in their favor with respect to Plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction over his remaining state law claims. A district court may decline to exercise supplemental jurisdiction over state law claims if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c). In fact, the Court of Appeals for the Third Circuit has instructed that "where the claim over which the district court has original jurisdiction is dismissed before trial, the district court *must* decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) (quoting *Borough of West Mifflin*

*v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995)) (emphasis in original). No such considerations weigh in favor of this Court continuing to exercise supplemental jurisdiction in this case.

Accordingly, the claims of assault and battery will be dismissed without prejudice to Plaintiff's ability to raise them in a state court action.

### V. Conclusion

For these reasons, the Motion for Summary Judgment (ECF No. 62) will be granted. An appropriate order will follow.

February 5, 2025                                        BY THE COURT:


/s/ Patricia L. Dodge
PATRICIA L. DODGE
UNITED STATES MAGISTRATE JUDGE